```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JOEL INGBER and DORIS INGBER,

                    Plaintiffs,

         -against-                          MEMORANDUM & ORDER
                                            13-CV-1207(JS)(SIL)
BARRY TRUFFLEMAN and ARLENE
TRUFFLEMAN,

                    Defendants.
----------------------------------------X
BARRY TRUFFELMAN,

         Counterclaim-Plaintiffs,

         -against-

JOEL INGBER and DAVID INGBER,

         Counterclaim Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:     Eugene David Kublanovsky, Esq.
                    Kublanovsky Law LLC
                    817 Broadway, 5th Floor
                    New York, NY 10003

For Defendants:     Aaron H. Marks, Esq.
                    Marissa Ellen Teicher, Esq.
                    Kasowitz, Benson, Torres & Friedman, LLP
                    1633 Broadway
                    New York, NY 10019
```

SEYBERT, District Judge:

This case concerns the failure to honor financial obligations arising out of the breakup of a dental practice. Plaintiffs Dr. Joel Ingber ("Dr. Ingber") and Doris Ingber ("Mrs. Ingber," and together with Dr. Ingber, "the Ingbers") commenced this action on March 8, 2013 against Defendants Dr. Barry

Truffelman ("Dr. Truffelman") and Arlene Truffelman ("Mrs. Truffelman"). On April 9, 2013, Dr. Truffelman filed an Answer and asserted various counterclaims against the Ingbers. (Docket Entry 9.) Pending before the Court is Dr. Truffelman's motion for summary judgment (Docket Entry 36). For the reasons that follow, Dr. Truffelman's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

In 1990 four dentists--Dr. Kudler, Dr. Truffelman, and the Ingbers--entered into a partnership agreement (the "Partnership Agreement") and opened a general dentistry practice in Manhattan. (Def.'s 56.1 Stmt., Docket Entry 38, ¶ 1; Pls.' Opp. Br., Docket Entry 45, at 3.) Unfortunately in 2001, Dr. Kudler was diagnosed with coronary artery disease and became unable to work. (Def.'s 56.1 Stmt. ¶ 2.) Dr. Kudler took disability under the terms of the Partnership Agreement, and the four dentists executed a disability retirement agreement (the "Disability Agreement") promising to make payments to Dr. Kudler.

Dr. Kudler received four years of payments under the Disability Agreement. (Def.'s 56.1 Stmt. ¶ 4.) In September 2005, however, Dr. Kudler brought an arbitration proceeding challenging

---

[1] The following facts are taken from parties 56.1 statements, along with the declarations and exhibits filed in connection with Dr. Truffelman's motion for summary judgment.

2

the provisions of the Partnership Agreement and the Disability Agreement. (Def.'s 56.1 Stmt. ¶ 4.)

After a one-day hearing, the arbitrator issued a decision that: (1) awarded Dr. Kudler $414,407.09; (2) directed the Ingbers and Dr. Truffelman to repay all outstanding loans on three life insurance policies taken out on Dr. Kudler's life (the "Kudler Policies") and to assign the Kudler Policies to Dr. Kudler, and (3) required the Ingbers and Dr. Truffelman to pay punitive damages, attorney fees, administrative fees of the American Arbitration Association, and the arbitrator's fee. (Def.'s 56.1 Stmt. ¶ 6.) On February 8, 2010, Justice Eileen A. Rakower issued a Decision, Order and Judgment (the "Judgment") confirming the arbitrator's award. (Teicher Decl., Docket Entry 39, Ex. C.) The Ingbers and Dr. Truffelman also appealed the Judgment on December 20, 2010, and the Court will refer to the arbitration and subsequent litigation initiated by Dr. Kudler as the "Kudler Litigation." (Def.'s 56.1 Stmt. ¶ 16.)

On July 8, 2009, Dr. Truffelman filed an arbitration demand with the American Arbitration Association alleging breach of the partnership agreement and breach of the covenant of good faith and fair dealing. (Def.'s 56.1 Stmt. ¶ 8.) In December 2009, the Ingbers and Dr. Truffelman entered into an agreement

3

(the "Settlement Agreement")[2] terminating the partnership and settling Dr. Truffelman's allegations. (Def.'s 56.1 Stmt. ¶ 9.) Under the terms of the Settlement Agreement, the Ingbers agreed to pay Dr. Truffelman $360,000 (the "Settlement Amount") in exchange for "Dr. Truffelman's agreement to, among other things, provide consulting services to the Ingbers, transition his practice to the Ingbers and transfer [his] rights to the Partnership's equipment" to the Ingbers. (Def.'s 56.1 Stmt. ¶ 11.) The Settlement Agreement specified that the $360,000 settlement amount was to be paid in biweekly installments beginning on January 1, 2010. (Def.'s 56.1 Stmt. ¶ 12.) Paragraph 10 of the settlement agreement also obligated the Ingbers and Dr. Truffelman to "remain equally responsible for any debt, liability, settlement, or any other obligation arising out of the [Kudler Litigation]." (Settlement Agreement ¶ 10.)

At some point, Dr. Kudler initiated a collection action to recover the money awarded to him in the Kudler Litigation. (Def.'s 56.1 Stmt. ¶ 20.) Through the collection action, Dr. Kudler recovered $655,962.57 from the Ingbers and $66,083.61 from Dr. Truffelman, for a total of $722,046.18. (Def.'s 56.1 Stmt. ¶¶ 20-22.)

---

[2] The Settlement Agreement is Exhibit D to the Teicher Declaration and can be found at Docket Entry 39-4.

4

On March 22, 2012, however, the Appellate Division, First Department issued a decision partially vacating the Judgment. The Appellate Division's decision specifically vacated the attorney fees award, the punitive damages award, that portion of the award assigning the Kudler policies to Dr. Kudler, and the requirement that that loans on the Kudler policies be repaid. (Def.'s 56.1 Stmt. ¶ 18.) Following the First Department's decision, Dr. Kudler was required to repay $162,813.87 to the appellants. (Def.'s 56.1 Stmt. ¶ 23.) The Ingbers subsequently reached a settlement with Dr. Kudler on November 14, 2012. In exchange for bringing the Kudler Litigation to a close, the Ingbers accepted $150,000 and two of the Kudler Policies. (Def.'s 56.1 Stmt. ¶ 24.) Unfortunately, Dr. Truffelman was not a party to the settlement of the Kudler Litigation. (Def.'s 56.1 Stmt. ¶ 24.)

On March 29, 2013, the Ingbers assigned two of the Kudler Policies to their counsel in the Kudler Litigation, Fensterstock & Partners, LLP (the "Fensterstock Firm"), in satisfaction of the legal fees they owed. (Def.'s 56.1 Stmt. ¶ 32.) But pursuant to the Settlement Agreement entered into by Dr. Truffelman and the Ingbers, Dr. Truffelman is entitled to 25% of the proceeds of the Kudler Policies.[3] (Def.'s 56.1 Stmt. ¶ 31.) The Fensterstock firm

---

[3] There were three Kudler Policies. The Massachusetts Mutual Life Insurance Company Convertible Life Insurance Policy and the Massachusetts Mutual Life Insurance Company Whole Life Plan. It is disputed what became of the third Kudler Policy (the

5

subsequently entered into a letter agreement with Dr. Truffelman in which Dr. Truffelman agreed not to join the Fensterstock firm as a party in this action in exchange for the Fensterstock firm agreeing to remit 25% of the value of the policies if Dr. Truffelman prevailed on his declaratory judgment counterclaim. (See Teicher Decl. Ex. L.)

It is undisputed that Dr. Truffelman has not paid his one-third share of the Judgment incurred in connection with the Kudler Litigation. (Def.'s 56.1 Stmt. ¶ 30.) In addition, there does not appear to be a legitimate dispute that the Ingbers owe Dr. Truffelman monies under the terms of the Settlement Agreement. The Ingbers paid a total of $152,307.81 of the Settlement Amount to Dr. Truffelman, but stopped making payments in August 2011. (Def.'s 56.1 Stmt. ¶¶ 25-27.) Therefore, the Ingbers still owe Dr. Truffelman $207,692.19 of the settlement amount.[4] (Def.'s 56.1 Stmt. ¶¶ 28-29.)

---

"Mayflower Policy"). Dr. Truffelman contends that the status of the Mayflower Policy has not been disclosed. (Def.'s 56.1 Stmt. ¶ 34.) Conversely, the Ingbers claim that Dr. Kudler stopped making premium payments and allowed the Mayflower policy to lapse. (Pls.' Countersmt., Docket Entry 44, ¶¶ 24, 34.)

[4] The Ingbers dispute this figure, however, their 56.1 counterstatement does not cite to any evidence in support of their claim that the figure is not accurate, nor do they provide any explanation for their disagreement with this particular fact. (Pls.' 56.1 Counterstmt. ¶¶ 28-29.)

On March 8, 2013, the Ingbers brought this action alleging, inter alia, that Dr. Truffelman breached the Settlement Agreement by failing to pay his share of the Judgment. (Compl. ¶ 15.) Dr. Truffelman subsequently filed counterclaims alleging that the Ingbers also breached the Settlement Agreement by failing to pay him the full Settlement Amount. (Answer, Docket Entry 9, ¶¶ 48-59.) Dr. Truffelman also asserts that he should be granted a declaratory judgment establishing that he is entitled to 25% of the value of the Kudler Policies. (Answer ¶¶ 48-59.) Pending before the Court is Dr. Truffelman's motion for partial summary judgment. Dr. Truffelman primarily seeks summary judgment on his counterclaims for breach of contract and his claim concerning his entitlement to 25% of the Kudler Policies. (See Def.'s Br., Docket Entry 37, ¶ 9-10.)

## DISCUSSION

The Court will first address the applicable legal standard on a motion for summary judgment before turning to the parties' arguments.

I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v.

7

Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

8

II. <u>Breach of the Settlement Agreement</u>

Dr. Truffelman argues that the Ingbers breached the Settlement agreement when they ceased making biweekly payments towards the satisfaction of the Settlement Amount. (Def.'s Br. at 9.) The Ingbers do not dispute that they have only paid $152,307.81 of the agreed-upon $360,000 settlement amount, but contend that summary judgment should not be granted on Dr. Truffelman's breach of contract counterclaim because Dr. Truffelman still owes the Ingbers his share of the Judgment and attorney fees incurred in connection with the Kudler Litigation. (Pl.'s Opp. Br. at 11-12.) However, Dr. Truffelman's indebtedness for costs related to the Kudler litigation are unrelated to the Settlement Agreement that the Ingbers and Dr. Truffelman negotiated and entered into. Although the Ingbers are certainly entitled to an offset for the money Dr. Truffelman failed to pay to satisfy the Judgment, "Offset claims do not bar summary judgment on . . . payment obligations, unless such obligations and the offset claims involve contractually 'dependent' promises." <u>Pereira v. Cogan</u>, 267 B.R. 500, 507 (S.D.N.Y. 2001) (quoting <u>Omark Indus., Inc. v. Lubanko Tool Co.</u>, 266 F.2d 540, 541 (2d Cir. 1959)). Therefore, summary judgment is GRANTED with respect to Dr. Truffelman's claim that the Ingbers breached the Settlement Agreement when they stopped making payments towards fulfilling the agreed-upon Settlement Amount.

III. <u>Attorney Fees</u>

Dr. Truffelman asserts that he is not obligated to pay one-third of the attorney fees incurred in the Kudler Litigation. (Def.'s Br. at 11.) The Court agrees. Paragraph 10 of the Settlement Agreement states that "[t]he Parties shall remain equally responsible for any debt, liability, settlement, or any other obligation arising out of the [Kudler Litigation]." (Settlement Agreement ¶ 10.) And the parties further agreed to "jointly cooperate in the defense of the Kudler Actions during their pendency." (Settlement Agreement ¶ 10.) The Settlement Agreement does not specifically mention attorney fees. Nevertheless, the Ingbers argue that paragraph 10 required Dr. Truffelman and the Ingbers to jointly pay attorney fees and costs resulting from the Kudler Litigation. "When an obligation to reimburse another party for its litigation expenses arises by contract, the terms of that agreement 'must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.'" <u>Goshawk Dedicated Ltd. v. Bank of New York</u>, No. 06-CV-13758, 2010 WL 1029547, at *6 (S.D.N.Y. Mar. 15, 2010) (quoting <u>Hooper Assocs., Ltd. v. AGS Computers, Inc.</u>, 74 N.Y.2d 487, 491, 548 N.E.2d 903, 905, 549 N.Y.S.2d 365, 367 (1989). Here, it is plain from the language of the Settlement Agreement that the parties did not contemplate sharing the cost of their attorneys in

10

the Kudler Litigation. Although they agreed to share the cost of "any debt, liability, settlement, or any other obligation arising out of the [Kudler Litigation]," it is not reasonable to infer that the phrase "any other obligation" required the Ingbers and Dr. Truffelman to share the cost of attorney's fees. In fact, all evidence points to the contrary--both the Ingbers and Dr. Truffelman had separate counsel in the Kudler Litigation and the Settlement Agreement also vaguely states that the parties would "jointly cooperate" in the litigation. In addition, paragraph 10 of the Settlement Agreement specifically required the parties to share the legal fees arising out of any state or federal tax audit. Thus, the plain language of paragraph 10 does not contemplate that the parties would share the cost of attorney's fees in the Kudler Litigation. To the extent the Ingbers claim that Dr. Truffelman is specifically obligated to reimburse them for attorney fees they incurred in connection with the Kudler Litigation, that claim is DISMISSED as a matter of law.[5]

IV. The Kudler Policies

Dr. Truffelman seeks a declaratory judgment that, under the terms of the Settlement Agreement, he is entitled to 25% of the proceeds of the Kudler Policies. (Def.'s Br. at 9-10.) It is

---

[5] It is unclear from the record before the Court whether the Settlement Agreement contemplated that the parties would share in the costs, other than attorney fees, that resulted from the Kudler Litigation.

11

appropriate to entertain a motion for declaratory judgment when "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992) (citation omitted). Here, rendering a decision on Dr. Truffelman's declaratory judgment counterclaim is appropriate because it will resolve an existing controversy between Dr. Truffelman, the Fensterstock firm, and the Ingbers concerning the Kudler Policies.

Paragraph 11 of the Settlement Agreement states that "[i]n the event the [ ] Partnership or any of the Parties are permitted to keep the [Kudler Policies], Dr. Truffelman will be entitled to 25% of the proceeds of such policies." (Settlement Agreement ¶ 11.) There is no dispute that following the First Department's decision in the Kudler Litigation and Dr. Kudler's settlement with the Ingbers, two of the Kudler Policies were returned to the Ingbers. The Ingbers subsequently assigned the two Kudler Policies to their attorneys, the Fensterstock firm in consideration for the legal services they provided. The Fensterstock firm then entered into a letter agreement with Dr. Truffelman in which Dr. Truffelman agreed not to join the Fensterstock firm as a party in this action in exchange for Fensterstock firm agreeing to remit 25% of the value of the

12

policies if Dr. Truffelman prevailed on his declaratory judgment counterclaim. In their brief, the Ingbers do not dispute that Dr. Truffelman is entitled to 25% of the value of the Kudler Policies. Therefore, Dr. Truffelman's motion for summary judgment is GRANTED to the extent he seeks a declaratory judgment that he is entitled to 25% of the value of the two Kudler Policies that were assigned to the Fensterstock firm.

V. <u>Doris Ingber's Breach of Contract Claim</u>

Dr. Truffelman asks the Court to dismiss Doris Ingber's claim for breach of the Settlement Agreement because Doris Ingber was not a party to the Settlement Agreement. (Def.'s Br. at 13.) In opposition, the Ingbers argue that Doris Ingber is the third-party beneficiary of the Settlement Agreement because her assets were used to satisfy Dr. Truffelman's share of the Judgment obtained by Dr. Kudler. (Pls.' Opp. Br. at 11-12.) "Generally, only an intended beneficiary of a contract may assert a claim as a third-party beneficiary." <u>Mortise v. United States</u>, 102 F.3d 693, 697 (2d Cir. 1996) (citation omitted). Other than the contract itself, neither party has presented any evidence that sheds light on whether Doris Ingber was an intended beneficiary of the Settlement Agreement. Nevertheless, it appears to be undisputed that Doris Ingber's assets were used to satisfy Dr. Kudler's judgment and that Dr. Truffelman did not pay his share of the Judgment, as he promised to do in the Settlement Agreement.

13

Factual issues therefore preclude granting summary judgment in favor of Dr. Truffelman on Doris Ingber's breach of contract claim.

## CONCLUSION

For the foregoing reasons, Dr. Truffelman's motion for summary judgment (Docket Entry 36) is GRANTED IN PART and DENIED IN PART. Specifically, summary judgment is GRANTED in favor of Dr. Truffelman: (1) on his claim that the Ingbers breached the Settlement Agreement when they stopped making payments toward fulfilling the agreed-upon Settlement Amount; (2) on his claim that the Settlement Agreement did not require Dr. Truffelman and the Ingbers to share in the cost of attorney fees in connection with the Kudler Litigation; and (3) to the extent Dr. Truffelman seeks a declaratory judgment that he is entitled to 25% of the value of the two Kudler Policies that were assigned to the Fensterstock firm. The balance of Dr. Truffelman's motion is DENIED.

At this juncture, only minor disputes remain unresolved. But given that both parties still owe one another sums of money that are generally known and quantifiable, the parties are encouraged to meet, confer, and settle this case on amicable terms.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: December   9  , 2015
       Central Islip, New York